## CENTRAL WEST CASUALTY CO et v W E WRIGHT CO

Ohio Appeals, 9th Dist, Summit Co

No 2624. Decided March 18, 1936

Rockwell, Grant, Doolittle, Thomas & Buckingham, Akron, for plaintiffs in error.

Brouse, Englebeck, McDowell, May & Bierce, Akron, for defendant in error.

**OPINION**

By WASHBURN, J.

One of the errors complained of is that such finding by the jury is manifestly against the weight of the evidence, and on that claim of error we find against said bondsman, the plaintiff in error.

It is also claimed that the trial court erred in refusing to direct the jury to return a judgment for the unpaid balance of said material, less said payments of $22,500, which the bondsman requested the court to do at the close of plaintiff's case and at the close of all of the evidence, there being no dispute as to the amount due if said payments of $22,500 were credited upon the claim for materials furnished under said contract.

It is conceded that as between a debtor and his creditor, the debtor has a right, when payments are made, to direct their application. and that if he fails to do so, the creditor may apply the payments as he sees fit; and also that where no appropriation of a payment is made by either the debtor or the creditor, the law will apply it according to the justice and equity of the case.

But it is claimed that, under the facts in this case, assuming that the debtor made no appropriation of the payments, the creditor had no right, as against said bondsman, to apply any part of said payments upon the debt owing by said debtor to said creditor at the time said bond was executed, in view of the fact that at the time said payments were made the creditor knew that the funds with which said payments were made were derived from payments made by the State of Ohio to said debtor upon said contract.

It is conceded by opposing counsel that if the funds from which said payments

were made were derived from the **bondsman,** then, according to the principles laid down in many cases, said creditor would not have the right, as against the bondsman, to have the benefit of the application which it had made; and it must be conceded that there are some cases which hold that even where the bondsman does not furnish the funds with which to make the payments, but where the specific money paid to the creditor and applied on the debt of the debtor, for which the bondsman is not bound, is the very money which the bondsman has guaranteed would be paid, he is not bound by such application, and is equitably entitled to have the money applied to the payment of the debt for which he is liable.

Our consideration of the cases upon this subject leads us to the conclusion that the weight of authority, and certainly the reasoning of the best considered cases, supports the proposition that where the bondsman does not furnish the money paid, nor cause it to be paid, he has no equity in its application superior to the right of the creditor to make the application, where the debtor, at the time of payment, made no direction as to the application of the payment. In other words, under such circumstances, the right of the bondsman with reference to said application rises no higher than the right of the debtor.

In the instant case, the money which the debtor received was not paid by the bondsman, and the bondsman in no wise caused it to be paid; the money was paid by the State of Ohio, and was received by the debtor unconditionally; and said money belonged to the debtor, and it had a right to use it to pay such of its debts as it pleased. There are no terms in the bond which in any manner interfere with the right of the debtor so to do. The bondsman took no measures whatever for its protection, and by the terms of the bond it undertook that the debtor should perform its own obligations in its own way.

The record discloses that the debtor in this case deposited the sums received from the State of Ohio upon said contract in its checking account, and that it had some other sources of income which were deposited in said account, and that the payments in question were made by checks upon that account.

The money paid by the debtor was not the very money which the bondsman guaranteed would be paid. The bondsman did not guarantee that the debtor would pay the money received from the State of Ohio to the creditor for materials purchased and used on the job; on the contrary, the bondsman guaranteed that the debtor would pay for such materials regardless of whether it received any money from the state. The State of Ohio was under no obligation to the bondsman to see that the money it paid on the contract was applied to the payment of the debtor's bills for materials; on the contrary, the money received from the state was the debtor's money and was not impressed with any trust for the benefit of the bondsman. The very purpose of the bond was to negative any inference of such trust, so as to permit the debtor to conduct its own business in its own way.

In the absence of any provision in the contract to that effect, it is difficult to understand upon what principle of law or equity a paid bondsman has any control over the money paid by the state to said debtor, or any rights therein which are superior to the rights of those who honestly transact business with such debtor, and who, as against said debtor, have a right to make application of money paid by said debtor.

Under our lien laws the property improved is subject to liens for materials used in such improvement, and to avoid the injustice of double payment, owners are held to have an interest in the application of payments made by them which those who know of such payments are bound to respect, and it would be logical to hold that a bondsman who guaranteed that the owner would make payments would have a like interest in the application of payments made by such owner; but how can a bondsman who does not guarantee performance by the owner be said to have any interest in the application of payments by the owner?

The fact is that in the instant case the bondsman did not succeed to the interest of the State of Ohio in the application of payments made by it. But it may be urged that the bondsman in this case guaranteed that the debtor would pay his creditor, and that therefore a different situation is presented.

While the debtor had a right to make application of the funds, the bondsman did not acquire that right. There is nothing in its contract binding the debtor to exercise such right in a manner favorable to the bondsman; instead, the whole tenor of the contract is a recognition of the independence of the debtor in the transaction of his own business.

If the creditor in this case had not known that said payments to it were made possible by payments on the contract made

by the State of Ohio to the debtor, the bondsman could not possibly have any equity in the application of the payments made to the creditor, unless its debtor had exercised its right to direct the application of such payments; and as has been said, we think that the evidence warranted the jury in finding that no such direction was expressly given by the debtor at the time said payments were made.

We do not think that knowledge of the creditor that the debtor had received payments on the contract from the State of Ohio, and by reason thereof was able to make the payments in question, prevented the creditor from making the application of the payments which was made. The fact is that in the instant case the bondsman did not succeed to the interest of the State of Ohio in the application of payments made by it.

Under all of the circumstances of this case, we do not think that the equities of the paid bondsman are any more to be favored than were the equities of the accommodation surety in the case of Gaston et v Barney, 11 Oh St 506. So far as the bondsman in this case is concerned, said payments were made from property of the debtor just as much as the payments made in the Gaston case were made from the property of the debtor, and if the court was not moved in the Gaston case to interfere on behalf of the surety with the creditor's right to make the application even after suit was brought, the court in this case ought not to interfere on behalf of the bondsman with the right of the creditor to make the application at the time said payments were made.

The jury having found that the debtor made no directions as to the application of said payments, and we having concluded that the right of the creditor to make the application of such payments is superior to any equity or right of the bondsman, the judgment will be affirmed.

FUNK, PJ, and STEVENS, J, concur in judgment.